## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LAFAYETTE RUSSELL, | |
| Plaintiff, | |
| v. | Case No. 24 C 7466 |
| EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*, | Hon. LaShonda A. Hunt |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Lafayette Russell sued Defendant Experian Information Solutions, Inc. ("EIS") for incorrectly reporting information in his credit file in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et. seq.* ("FCRA"). (Compl., Dkt. 1).[1] EIS moved to compel arbitration on the ground that Russell agreed to arbitrate this type of dispute when he signed up for services through "CreditWorks." (Mot. at 136-137, Dkt. 42).[2] Russell opposes the motion, contending that EIS has not met its burden. For the reasons discussed below, the Court grants the motion to compel.

## <u>BACKGROUND</u>

EIS submitted a declaration by Dan Smith in support of its motion. (Smith Decl., Dkt. 42-1).[3] Smith is Director of Product Operations for ConsumerInfo.com d/b/a Experian Consumer

---

[1] Plaintiff also sued several other defendants, all of whom have now been dismissed.

[2] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header of the document, not other page numbers in the header or footer.

[3] As a preliminary matter, Smith's declaration is admissible under the rules of evidence. Under Federal Rule of Civil Procedure 56(c)(4), a declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Smith's declaration meets this standard. He attested that his job duties require him to "be familiar with, among other things, how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." (Smith Decl.

Services ("ECS"). (*Id.* ¶ 1). EIS is an affiliate of both ConsumerInfo.com and ECS. (*Id.* ¶ 2). Part of Smith's job is to support the consumer enrollment process for CreditWorks. (*Id.* ¶ 1). CreditWorks is "the name of Experian's credit monitoring service provided by ConsumerInfo.com. (Mot. at 136).

Russell enrolled in CreditWorks on June 17, 2024, by completing one webform. (Smith Decl. ¶ 3). The form required him to enter personal contact information. (*Id.*). After doing so, Russell had to click the "Create Your Account" button on the webform to enroll. (*Id.*). Below where he would enter his password is the following disclosure:

> By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy.

(*Id.*). The words "Terms of Use Agreement" were included in a link with bold, blue text that, if clicked, would lead the user to a full version of the use agreement. (*Id.* ¶ 4). Below the disclosure was a large purple button that read: "Create Your Account." (*Id.*). Russell clicked the "Create Your Account" button, thereby accepting the Terms of Use Agreement. (*Id.* ¶¶ 4-5).

The Terms of Use Agreement included an arbitration clause. (*Id.* ¶ 6). The clause states the following:

> ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration. For purposes of this Arbitration Agreement, the term "Information" means any credit, personal, financial or other information delivered to you as part of, or in conjunction with, the Services, including any such information that may be archived to the extent made available on the Websites, including (i) for your purchase of non-membership based Services such as the 3 Bureau Credit Report and FICO® Scores, the FICO Industry or other Base FICO Scores and/or an

---

¶ 1). His position allows him to "confirm[] the consumer's membership details, such as the date and time of enrollment, the version of the Terms of Use they agreed to." (*Id.*). "Smith did not have to be in the room with [Russell] when []he enrolled to have firsthand knowledge. His knowledge of the enrollment process, including the forms a person must complete to enroll, is sufficient firsthand knowledge upon which to base the declaration." *Buelna v. Experian Info. Sols., Inc.*, No. 3:23-CV-724-CCB-SJF, 2024 WL 3873694, at *3 (N.D. Ind. Aug. 20, 2024).

Experian Credit Report and FICO Score, (ii) enrollment and use of free Services (such as EXPERIAN CREDITWORKS Basic), and/or enrollment, purchase and use of membership based Services (such as EXPERIAN CREDITWORKS Premium, Experian IdentityWorks, or Experian Credit Tracker); and (iii) your access to and use of calculators, credit resources, text, pictures, graphics, logos, button items, icons, images, works of authorship and other information and all revisions, modifications, and enhancements thereto contained in the Websites.

(*Id.* at 162). The clause goes on to state that it "is intended to be broadly interpreted and to make all disputes and claims between us relating to, or arising out of, this Agreement," and includes claims based on "the Fair Credit Reporting Act." (*Id.* at 162-163). During the entire time Russell has been enrolled, EIS has been an affiliate of ECS. (*Id.* ¶ 6). In fact, the Terms of Use Agreement's "Overview and Acceptance of Terms" section defines "ECS" to include its "affiliates (including, but not limited to, ***Experian Information Solutions, Inc.***) . . . ." (*Id.* at 163) (emphasis added).

Russell eventually noticed that EIS "wrongly reported that his account with Mariner Finance was discharged in bankruptcy," when it had actually been "excluded from the bankruptcy." (Opp'n, at 216, Dkt. 49) (citing Compl. ¶ 40). As a result, Russell filed this lawsuit on August 20, 2024, to which EIS has responded with the pending motion to compel arbitration.

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") does not specify the evidentiary standard a party looking to avoid compelled arbitration must meet. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The Seventh Circuit has "analogized the standard to that required of a party opposing summary judgment" under Fed. R. Civ. P. 56(e). *Id.* "The party seeking to compel arbitration bears the initial burden to show that an arbitration agreement exists. *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024)." The opposing party then must show that there is a genuine issue of material fact, and they must "identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder*, 305 F.3d at 735.

## DISCUSSION

Under the FAA, 9 U.S.C. § 2, a court will compel arbitration if it concludes that: (1) there is an enforceable written agreement to arbitrate; (2) the dispute falls within the scope of that agreement; and (3) a party refuses to arbitrate. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). "Generally, federal policy favors arbitration, and once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983)).

In support of its motion to compel arbitration, EIS argues that Russell entered a valid agreement to resolve his FCRA claims against EIS through arbitration when he assented to the Terms of Use Agreement. (Mot. at 140-142). Russell counters that this dispute should remain in federal court because EIS has not "demonstrated that it is entitled to use [the Terms of Use Agreement] to compel arbitration . . . ." (Opp'n at 217). In short, Russell argues that EIS has not shown that the Terms of Use Agreement and its arbitration clause apply to the present dispute. Because Russell opposes arbitration, the questions before the Court are: (1) whether the parties formed a valid arbitration agreement when Russell accepted the Terms of Use for CreditWorks; and (2) if so, whether that agreement encompasses Russell's FCRA claims against EIS.

## I. Contract Formation

The FAA "requires courts to place arbitration agreements on equal footing with all other contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 248 (2017) (quotes omitted). "A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Id.* at 251 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U. S. 333, 339 (2011)). Under the FAA, arbitration is a matter

4

of contract, and courts must enforce arbitration contracts according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The Supreme Court guides that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (quoting *Rent-A-Center*, 561 U.S. at 68-69).

"[S]tate law, . . . is applicable to determine which contracts are binding under § 2 and enforceable under § 3 [of the FAA] . . . ." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016).[4] "This is not hard to accomplish, as the enormous volume of commerce on the Internet attests." *Id.* The Seventh Circuit instructs courts to look to whether "the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Id.* at 1034.

In *Sgouros*, the Seventh Circuit held that the sign-up process failed to provide adequate notice of contractual assent. *Id.* at 1035-1036. There, the web pages lacked any clear statement that purchases were subject to terms and conditions, the hyperlinked agreement was labeled merely "Printable Version" rather than a clear identifier like "Terms of Use," and the required click authorized only information disclosure without mentioning contractual terms. *Id.* at 1035. The

---

[4] From this Court's review, there is no choice-of-law provision in the Terms of Use Agreement. Therefore, as EIS does without objection from Russell (*see* Mot. at 144), the Court will analyze arguments related to contract formation under Illinois law. The Court notes that "[b]oth federal and state courts acknowledge that the FAA's policy in favor of arbitration applies when determining the *scope* of an agreement to arbitrate, but not when deciding whether there is an agreement to arbitrate in the first instance." *Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 781-784 (7th Cir. 2014) (applying Indiana law when analyzing contract formation and enforcement).

court therefore concluded that "[n]o reasonable person would think that hidden within that disclosure was also the message that the same click constituted acceptance of the Service Agreement." *Id.*

Unlike the sign-up process in *Sgouros*, users here were given notice of their agreement to the Terms of Use Agreement while signing up for the service. Before enrolling with CreditWorks, users encountered a notice that stated that "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." (Smith Decl. ¶ 3). And a link to the Terms of Use Agreement was offset in bold, blue text and led customers to the full text of the Terms of Use Agreement. (*Id.* ¶ 4). "This is unlike the webpage in *Sgouros* which did not direct users to the full agreement or mention that its users were agreeing to contractual terms." *Buelna*, 2024 WL 3873694, at *3 (citing *Sgouros*, 817 F.3d at 1035-1036).

Smith's declaration shows that Russell agreed to be bound by the Terms of Use Agreement, including the arbitration clause, when Russell clicked the "Create Your Account" button and accepted those terms. (Smith Decl. ¶ 5). Smith confirms that Russell "would not have been able to successfully enroll in CreditWorks unless he clicked that button." (*Id.*). Russell did not present any evidence to create doubt concerning whether he agreed to the terms. As such, the Court finds no dispute of material fact that the Terms of Use Agreement is a valid contract between the parties.

## II.    <u>Scope of the Agreement</u>

EIS argues that Russell is bound by the terms of the Terms of Use Agreement; thus he must arbitrate his FCRA claims. (Mot. at 141-142). Russell maintains, however, that his suit does not fall within the arbitration clause of the agreement, as he contends the claims here have nothing to do with his enrollment with CreditWorks. (Opp'n at 217-223). But Russell's argument ignores the

6

plain language of the Terms of Use Agreement and the liberal federal policy regarding the scope of arbitration clauses.[5]

Once it is clear that the parties entered into an agreement to arbitrate certain issues, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Moses H. Cone*, 460 U.S. at 24-25). Thus, a court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960)).

The Terms of Use Agreement includes an arbitration clause that expressly covers claims against "Experian Information Solutions, Inc.," or EIS, under the "Fair Credit Reporting Act." (Smith Decl., at 156, 163). Specifically, "[t]he agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute[,] including, without limitation, the **Fair Credit Reporting Act** . . . ." (*Id.* at 163) (emphasis added). The Terms of Use Agreement's definition of "ECS" consists of its "affiliates" which "includ[es], but [is] not limited

---

[5] His position also ignores the bevy of case law cited by EIS, (Mot. at 134-136) (collecting cases), on this very topic. *See Meeks v. Experian Info. Sols. Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022) (reversing district court's denial of EIS's motion to compel based on a similar arbitration agreement and finding that EIS is an affiliate of ECS); *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 848 (N.D. Cal. 2024) ("Because [the plaintiff] entered into the larger Terms of Use Agreement when he signed up for credit monitoring services through CreditWorks, and because Experian is expressly included as a party to the arbitration provision included in the Terms of Use, the Court is obliged to compel the claims against Experian to arbitration."); *Buelna*, 2024 WL 3873694, at *3 (upon EIS's motion to compel the court compelled arbitration of similar agreement entered into upon the plaintiff's enrollment in CreditWorks membership).

to, ***Experian Information Solutions, Inc.***," or EIS.[6] (*Id.* at 156) (emphasis added). The clause also states that the parties agreed to arbitrate claims that "arise out of or relate to . . . any Information you obtain through the Services or Websites." (*Id.* at 162). Those "Services" include, in relevant part, "any of [EIS's] products and services, including credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), the receipt of any alerts notifying you of changes to the information contained in your credit report(s) . . . ." (*Id.* at 156).

Here, Plaintiff's FCRA claims center around EIS "failing to follow reasonable procedures to assure maximum possible accuracy of the information included in [Russell's] credit file and consumer reports . . . ." (Compl. ¶ 75). Since credit reports are "Services" under the Terms of Use Agreement, the parties' dispute involving allegedly inaccurate credit reports therefore "arise[s] out of or relate[s] to" the "Services" provided to Russell by EIS, as defined by their contract. Accordingly, the express language of the Terms of Use Agreement covers Russell's FCRA dispute against EIS.

Based on the above, the Court finds that the language of the Terms of Use Agreement, coupled with "the FAA's policy in favor of arbitration [which] applies when determining the scope of an agreement to arbitrate," *Druco*, 765 F.3d at 781, establish that the parties agreed to arbitrate

---

[6] "[N]umerous courts considering the same or similar agreements involving EIS have found EIS is properly considered an affiliate under the same or similar Arbitration Agreements." *Cimillo v. Experian Info. Sols., Inc.*, No. 21 CV 9132 (VB), 2023 WL 2473403, at *5 n.7 (S.D.N.Y. Mar. 13, 2023); *see also Meeks*, 2022 WL 17958634, at *2 (finding "sufficient evidence that Experian sought to be bound by the arbitration provision" which defined ECS to include affiliates).

the present FCRA dispute. Russell has pointed the Court to no evidence that states otherwise. The Court therefore grants EIS's motion to compel arbitration.[7]

## CONCLUSION

EIS's motion to compel arbitration [42] is granted and this case is stayed pending the completion of the arbitration proceedings. As a result, EIS's motion for a stay of discovery pending resolution of its motion to compel [62] is denied as moot.

**DATED**: June 20, 2025                                   **ENTERED**:

_LaShonda A. Hunt_

LaShonda A. Hunt
United States District Judge

---

[7] Russell also makes factual assertions—which could be perceived as an undeveloped argument—that his claims "existed for nearly a year before he separately signed up for his" CreditWorks membership that provides the basis for EIS's argument. (Opp'n at 221-222). "It is a well-established rule that arguments not raised to the district court are waived on appeal." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). "Conclusory and underdeveloped arguments are likewise waived." *MBM Holdings LLC v. City of Glendale*, 843 F. App'x 5, 8 (7th Cir. 2021) (citing *Puffer*, 675 F.3d at 718). "It is the responsibility of the litigants to raise coherent legal claims, produce factual support, and develop reasoned arguments supported by citation to legal authority." *Id.* Russell cites no cases or legal authority in connection with his theory about the temporal components of his case. The Court declines to engage in legal analysis regarding the timeline of this case where Russell failed to do the same.